UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RICHARD CROWELL,

                Plaintiff,                Case No. 2:14-cv-216

v.                                              Honorable R. Allan Edgar

RICHARD SNYDER,

                Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Richard Crowell, a state prisoner currently confined at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Governor Richard Snyder and Michigan State Police Colonel Kristie K. Etue. In his complaint, Plaintiff alleges that he was convicted of a sex offense in 1993 pursuant to a plea agreement. Plaintiff states that the application of the sex offender registry to him violates the Ex Post Facto clause and the Double Jeopardy clause, as well as Plaintiff's rights under the Due Process Clause. Plaintiff seeks declaratory and injunctive relief.

**Discussion**

I.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff asserts that forcing him to register as a sex offender violates his rights under the Double Jeopardy Clause. As noted by the United States District Court for the Eastern District of Michigan when addressing the constitutionality of Michigan's sex offender registration and community notification statute:

> The Double Jeopardy Clause provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." As the Supreme Court held in *Hudson*[ *v. United States*]*,* the "Clause protects only against the imposition of multiple criminal punishments for the same offense." *Hudson,* 522 U.S. [93, 98-99,] 118 S.Ct. [488, 493 (1997)] (citations omitted). Whether a particular punishment is civil or criminal depends initially on whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *Id., quoting United States v. Ward,* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). Even in those cases where the legislature "has

indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect to transform what was clearly intended as a civil remedy into a criminal penalty." *Id.* (citations omitted).

In determining whether the civil remedy is overwhelmingly punitive in purpose or effect, the *Hudson* Court found that the factors listed in \*853 *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963), are helpful, including: (1) "whether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment-retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may be rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned." Further, the *Kennedy–Martinez* factors "must be considered in relation to the statute on its face, and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson,* 522 U.S. at ––––, 118 S.Ct. at 493 *quoting Ward,* 448 U.S. at 249, 100 S.Ct. at 2641–42.

Applying the *Hudson* analysis to this case, it is clear that application of either the Act's notification or registration provisions to plaintiff would not violate the Double Jeopardy Clause. Unlike other cases dealing with similar sex offender registration and notification statutes, the Michigan Act contains no express statements of legislative intent. *See e.g. Doe v. Weld,* 954 F.Supp. 425, 429 (D.C.Mass.1996); *Doe v. Pataki,* 120 F.3d 1263, 1276 (2d Cir.1997). However, most circuits that have addressed the issue have found the purpose of the notification and registration provisions to be regulatory. *See e.g. Doe v. Pataki,* 120 F.3d at 1285; *E.B. v. Verniero,* 119 F.3d 1077, 1096–97 (3d Cir.1997); *Artway v. Attorney General,* 81 F.3d 1235, 1264 (3d Cir.1996); *Russell v. Gregoire,* 124 F.3d 1079, 1090 (9th Cir.1997).

Although the Act does not contain an express statement of legislative intent, the implied purpose is plainly regulatory. *See Hudson,* 522 U.S. at ––––, 118 S.Ct. at 493. Neither notification or registration inflicts suffering, disability, or restraint on the registered sex offender. It does nothing more than create a method for easier public access to

compiled information that is otherwise available to the public through tedious research in criminal court files. Like similar laws in other states, the Michigan Act also seeks to provide the local citizenry with information concerning persons residing near them who have been convicted of sexually predatory conduct and who, by virtue of relatively high recidivism rates among such offenders and the devastating impact that sex crimes have on society, pose a serious threat to society. *See Doe v. Pataki,* 120 F.3d at 1266 (citing numerous studies which indicate the seriousness of the harm that sex offenders pose and the perception, supported by some data, that sex offenders have a higher relative recidivism rate than other offenders).

The language of section 730 makes clear that the legislature intended the notification provision to prevent future attacks by recidivist sex offenders. The text and structure reveal no intent to punish, but rather only a regulatory purpose. Notification is limited both by the amount of information available and the area in which the information is disseminated. First, the data available for public dissemination is limited to information already available from law enforcement, court, and Department of Corrections records. Mich.Comp.Laws Ann. 15.231 et. seq. Second, access to the sex offender registry is limited by zip code so that only those living in the same zip code as the sex offender can obtain the information. A law designed to punish a sex offender would not contain these strict limitations on public dissemination.

Turning to the second phase of the *Hudson* test, this Court finds that there is little or no evidence suggesting that sex offender registration and notification is "so punitive in form and effect as to render them criminal despite Congress' intent to the contrary." *Hudson,* 522 U.S. at ——, 118 S.Ct. at 495 *quoting United States v. Ursery,* 518 U.S. 267, 289, 116 S.Ct. 2135, 2148, 135 L.Ed.2d 549 (1996).

First, sex offender registration and notification have no strict historical precedent. Plaintiff argues that the notification provisions can be analogized to the law in Nazi Germany which required Jews to wear the Star of David for identification purposes. However, this Court cannot accept plaintiff's suggested analogy. The purpose of registration*854 and notification is to warn the local citizenry of the possibility that a person living in the community presents a serious threat to society. The sting of notification comes not from their being publicly displayed for shaming and ridicule, but rather from the dissemination of accurate public record information about their past

criminal activities. Dissemination of information about a person's criminal involvement has always held the potential for negative repercussions for those involved. However, public notification in and of itself, has never been regarded as punishment when done in furtherance of a legitimate government interest. *Doe v. Kelley,* 961 F.Supp. 1105, 1110 (W.D.Mich.1997). The registration and notification requirements can be more closely analogized to quarantine notices when public health is endangered by individuals with infectious diseases. *Kansas v. Hendricks,* 521 U.S. 346, ——, 117 S.Ct. 2072, 2084, 138 L.Ed.2d 501 (1997). Whenever notification is directed to a risk posed by individuals in the community, those individuals can expect to experience some embarrassment and isolation. Nonetheless, it is generally recognized that the state is well within its rights to issue such warnings and the negative effects are not regarded as punishment. Therefore, the relevant historical precedent does not demonstrate an objective punitive purpose.

Second, as discussed above, the Act does not involve an "affirmative disability or restraint," as that term is normally understood. While plaintiff may experience a certain amount of embarrassment from public dissemination, this is "certainly nothing approaching the 'infamous punishment' of imprisonment." *Hudson,* 522 U.S. at ——, 118 S.Ct. at 496 *quoting Flemming v. Nestor,* 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435 (1960).

Third, neither registration nor community notification comes into play "only" on a finding of scienter. The Act simply requires that certain individuals convicted of an enumerated sex offense must register with the local law enforcement agency. Mich.Comp.Laws Ann. § 28.723. Moreover, those required to register are also subject to public notification under section 730. Neither provision requires a finding of scienter.

Fourth, the conduct for which the Act's sanctions are imposed may also be criminal (and in this case formed the basis for plaintiff's incarceration). However, "[t]his fact is insufficient to render the [penalties] criminally punitive," *Hudson,* 522 U.S. at ——, 118 S.Ct. at 496, particularly in the double jeopardy context, *see United States v. Dixon,* 509 U.S. 688, 704, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993) (rejecting "same-conduct" test for double jeopardy purposes).

> Finally, this Court recognizes that imposition of the registration and notification requirements may deter others from future criminal activity, a traditionally recognized punitive purpose. However, a secondary criminal purpose may not undermine the Act's primary remedial purpose, as deterrence "may serve civil as well as criminal goals." *Hudson,* 522 U.S. at ——, 118 S.Ct. at 496 quoting *Ursery,* 518 U.S. at 291, 116 S.Ct. at 2149. Therefore, the notification provision does not violate the Double Jeopardy Clause. Accordingly, the less onerous registration provision also passes constitutional scrutiny.

*Lanni v. Engler*, 994 F.Supp. 849, 852 -854 (E.D. Mich., Feb. 13, 1998).

For the reasons stated by the court in *Lanni*, the sex offender registration and notification law is not sufficiently punitive to render it a criminal penalty. Therefore, the court concludes that Plaintiff's double jeopardy claim is properly dismissed.

Moreover, Michigan's sex offender registration and notification statute does not violate the Ex Post Facto Clause. Where a change in the law produces a "sufficient risk" of increasing the measure of punishment for an individual who has already been convicted and sentenced, it constitutes a violation of the Ex Post Facto Clause. *California Department of Corrections v. Morales*, 514 U.S. 499, 509 (1995). The court in *Lanni* concluded that the sex offender registration and notification statute did not impose punishment:

> First, as discussed above, the purpose of the act was to protect the public, and not to punish sex offenders. Second, the historical precedent does not demonstrate an objective punitive purpose. Finally, neither the direct or indirect effects of the Act are sufficiently onerous for this Court to conclude that any punitive effects clearly outweigh the remedial purpose.

*Id.* at 855-856.

Finally, Plaintiff asserts a violation of his due process rights. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under

the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. Women's Med. Pro"l Corp. v. Baird, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

> As noted by the court in *Lanni*:
>
> The Act merely compiles truthful, public information and makes it more readily available. To the extent that plaintiff may suffer injury to his reputation or loss of employment opportunities, such injuries are purely speculative on the present record. Moreover, this Court finds that any detrimental effects that may flow from the Act would flow most directly from plaintiff's own misconduct and private citizen's reaction thereto, and only tangentially from state action. Therefore, plaintiff has not shown the Act entitles him to due process protection.
>
> Even if the plaintiff could prove deprivation of a liberty or property interest, plaintiff's due process claim still must fail. Plaintiff has not indicated what individualized determination need be made in this case. Instead, plaintiff's due process challenge is little more than an attack on the legislature's decision to subject sex offenders to registration and community notification. Under the Act, all sex offenders are required to register and are subject to limited public disclosure. Accordingly, the local law enforcement agency has no discretion to determine which sex offenders will be exposed to public dissemination. Therefore, a hearing would serve no purpose. *See Doe v. Weld,* 954 F.Supp. 425, 437 (D.Mass.1996).

*Id.* at 855.

> With regard to the plaintiff Lanni's substantive due process claims, the court found:
>
> Plaintiff claims that the Act deprives him of his constitutional right to privacy. Plaintiff essentially argues that public dissemination of his personal data will damage his reputation and prevent him from obtaining employment. However, reputational interests have not been accorded the same level of protection in our society as have interests

> which have been deemed by the Supreme Court to be "implicit in the concept of ordered liberty." *See E.B. v. Verniero,* 119 F.3d 1077 (3d Cir.1997) *quoting Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In this case, the information made public by the Act is already a matter of public record, to which no privacy rights attach. Therefore, plaintiff has failed to demonstrate the existence of a legitimate privacy interest in preventing compilation and dissemination of truthful information that is already, albeit less conveniently, available as a matter of public record.

*Id.* at 856. For the reasons enumerated by the court in *Lanni*, the court will dismiss Plaintiff's due process claims.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:     11/19/2014                          */s/ R. Allan Edgar*
                                               R. Allan Edgar
                                               United States District Judge